En El Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Departamento de Recreación y Deportes<br>    Demandante-Recurrido<br><br>                 V.<br><br>Asociación Recreativa Round Hill, Inc.<br>    Demandada-Peticionaria<br><br>Club de Natación de Round Hill,Inc.<br>    Parte Interventora | Certiorari<br><br>99 TSPR 135 |

Número del Caso: CC-1998-736

Abogados de la Asoc. Recreativa de Round Hill, Inc.:

        Lcda. Awilda E. López Paláu

Abogados del Dpto. De Recreación y Deportes:

        Lcda. María A. Hernández Martín
        Procuradora General Auxiliar
        Lcda. Luisa Arroyo

Abogados del Club de Natación de Round Hill:

        Lcdo. Moisés Abreu

Agencia: Departamento de Recreación y Deportes

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel Integrado por:      Hon. Ramos Buonomo
                          Hon. González Román
                          Hon. Córdova Arone

Fecha: 8/19/1999

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Recreación
y Deportes
      Demandante-Recurrido

              v.

                                    CC-1998-736    Certiorari

Asociación Recreativa Round
Hill, Inc.
      Demandada-Peticionaria

Club de Natación de Round
Hill, Inc.
      Parte Interventora

PER CURIAM

San Juan, Puerto Rico, a 19 de agosto de 1999.

I.

En 1974, la peticionaria Asociación Recreativa Round Hill Inc., una corporación sin fines de lucro que existía desde 1963, fue autorizada por el Secretario del Departamento de Recreación y Deportes (DRD) a administrar las instalaciones recreativas públicas de la urbanización Round Hill de Trujillo Alto, Puerto Rico. El 30 de junio de 1995, la peticionaria suscribió un convenio de colaboración con otra entidad corporativa afín, el Club de Natación de Round Hill, Inc. (el Club), para estipular la relación entre ambas entidades. El 20 de junio de 1997, el Secretario del Departamento de Recreación y Deportes emitió una resolución parcial mediante la cual dispuso prorrogar dicho convenio

hasta que se resolvieran unos asuntos económicos relativos al uso de las instalaciones por parte del Club. Además ordenó a las partes a que iniciaran una negociación de buena fe para alcanzar un nuevo acuerdo.

El 27 de agosto de 1997, deterioradas ya las relaciones entre la peticionaria y el Club, el Secretario del DRD emitió otra resolución parcial mediante la cual en lo pertinente ordenó a las personas que estaban actuando como administradores de la Asociación que desistieran de actuar en forma arbitraria contra los miembros del Club.

Un mes después, el 16 de septiembre de 1997, el director de la División de Asociaciones Recreativas del DRD presentó una querella mediante la cual solicitó al DRD que declarara a la Asociación "inoperante". Fundamentó su solicitud en que la Asociación no le estaba dando participación al Club en los asuntos relacionados con las facilidades públicas deportivas, y en que se le había dificultado el uso de las instalaciones a los miembros del Club, entre otras cosas.  Por su parte, el Club también presentó una querella, el 17 de septiembre de 1997, por las alegadas actuaciones arbitrarias de la Junta de Directores de la Asociación para con sus miembros. Ese mismo día, mediante Orden Administrativa, el Secretario del DRD declaró "inoperante" a la Asociación y ordenó que se nombrara un comité de transición para, entre otras cosas, reorganizar dicha Asociación. Posteriormente, el 25 de septiembre, el director de la División de Asociaciones Recreativas del DRD, mediante carta le requirió al vicepresidente de la

Asociación la entrega de las llaves, del inventario, de los contratos y de cualquier documentación necesaria para continuar el funcionamiento de la Asociación a tenor con la Orden Administrativa referida.

Así las cosas, el 1 de octubre de 1997, la Asociación presentó ante el Tribunal de Primera Instancia, una petición de entredicho provisional, injunction preliminar y permanente, para que dejaran sin efecto las órdenes emitidas por el DRD y el director de la División de Asociaciones Recreativas del 17 y 25 de septiembre de 1997. En esencia, cuestionó la autoridad del DRD para emitir dichas órdenes, que en efecto realizaban la liquidación de un ente corporativo privado y la incautación de sus haberes. El 2 de octubre de 1997, la petición de entredicho provisional fue declarada no ha lugar y se señaló una conferencia con antelación a la vista de injunction preliminar.

El 8 de octubre de 1997, luego de escuchar a ambas partes, el Tribunal de Primera Instancia remitió el caso al foro administrativo para que el DRD designara un oficial examinador y celebrara una vista administrativa sobre el asunto. El foro de instancia, además, designó un comité integrado por personas de la comunidad para atender la manera en que se resolverían los trámites ordinarios de la Asociación en lo que se dilucidaban las diferencias entre las partes.

El DRD designó al oficial examinador referido el 30 de octubre de 1997. Además, señaló el 10 de noviembre de 1997

para la celebración de la vista administrativa aludida. La notificación de dicha vista fue hecha el 31 de octubre de 1997, depositada en el correo el 4 de noviembre y recibida por la peticionaria el 7 de noviembre de 1997.

El 10 de noviembre de 1997, la peticionaria presentó ante el DRD y el Tribunal de Primera Instancia una moción sobre irregularidades en la citación a la vista administrativa.  En dicha moción alegó que la notificación a la vista era defectuosa por haber sido efectuada en contravención a lo dispuesto por la Ley de Procedimiento Administrativo Uniforme. No obstante, ese mismo día se celebró la vista administrativa sin la comparecencia de la peticionaria.

El 20 de noviembre de 1997, luego de examinar el informe del referido oficial examinador, el Secretario del DRD lo adoptó.  Emitió una Resolución y Orden, en virtud de la cual declaró "inoperante" a la Junta de Directores de la Asociación y ordenó la entrega al Departamento de todas las llaves, del inventario de equipo, los libros de contabilidad, cheques y dinero en efectivo y otras pertenencias de la Asociadión.

Por otro lado, ante el Tribunal de Primera Instancia se celebraron varias vistas antes de la celebración de la vista de injunction preliminar. El tribunal le expresó a la peticionaria que ésta venía obligada a utilizar los recursos ordinarios que tuviera a su disposición ante la agencia administrativa. A tenor con ello, el 10 de diciembre de 1997

la peticionaria presentó ante el DRD una Moción de Reconsideración a la Resolución emitida el 20 de noviembre de 1997. Esta moción fue declarada no ha lugar por el DRD el 3 de febrero de 1998.

Por su parte, el Tribunal de Primera Instancia en corte abierta declaró sin lugar la petición de injunction preliminar porque no se cumplían con los requisitos para su concesión.

En vista de la decisión adversa del DRD, el 5 de marzo de 1998 la peticionaria presentó un recurso ante el Tribunal de Circuito de Apelaciones solicitando la revisión de la resolución emitida por el DRD el 20 de noviembre de 1997. Mediante resolución del 19 de junio de 1998, archivada copia de su notificación el 25 de junio de 1998, el foro apelativo declaró no ha lugar la solicitud de revisión. Además impuso una sanción de $1,000.00 a la peticionaria por estimar que el recurso presentado era frívolo. El foro apelativo resolvió **que si bien era cierto que el DRD no había cumplido con las normas establecidas por la Ley de Procedimiento Administrativo Uniforme para la notificación de la vista**, la peticionaria había recibido la notificación y "[a] pesar de ello optó por no comparecer a la misma, sin excusarse ni pedir suspensión, para luego formular objeciones a la forma y manera en que fue notificada la misma. Al tomar la decisión de no comparecer a la vista, la Asociación sabía que ello tendría unas consecuencias." Añadió que la decisión de la peticionaria de no comparecer a la vista "no puede

justificarse de forma alguna y sólo puede entenderse, al examinar todo el trámite procesal del caso, como una estrategia más para ocasionar la dilación injustificada de los procedimientos." **Esta última expresión fue hecha por el TCA sin exponer las razones en las que fundamentó esta conclusión de hecho, y sin darle a la peticionaria la ocasión de expresarse sobre el particular antes de que el tribunal formulase tal conclusión.**

Inconforme con esta determinación, el 28 de agosto de 1998 la peticionaria interpuso el presente recurso ante nos y planteó, en lo pertinente, lo siguiente:

A. ...

B. [E]rró el Tribunal de Circuito de Apelaciones al no ordenar la celebración de una nueva vista administrativa al no haberse notificado conforme lo requiere la sección 2159 de la Ley de Procedimiento Administrativo Uniforme, constituyendo una violación al debido proceso de ley garantizado por la Constitución del Estado Libre Asociado de Puerto Rico; a pesar de haber dictaminado que el Departamento no cumplió con el término que dispone la ley y de haberse presentado el día de la vista una oportuna moción sobre irregularidades en la notificación de la vista ante el Departamento.

C. Erró el Tribunal de Circuito de Apelaciones al sancionar a la Asociación a tenor con la Regla 85 del Reglamento del Tribunal de Circuito de Apelaciones; a pesar de ser un recurso donde se plantean la interpretación de tres leyes trascendentales como lo son la ley orgánica del Departamento de Recreación y Deportes, la Ley de Procedimiento Administrativo Uniforme y la Ley General de Corporaciones en un asunto tan novel como lo es quien tiene la facultad en ley de conceder y eliminar la personalidad jurídica corporativa.

El 25 de noviembre de 1998, emitimos una orden mediante la cual requerimos a la parte recurrida que mostrara causa

por la cual no debía expedirse el recurso y revocarse el dictamen apelativo por no haber ordenado la celebración de una nueva vista administrativa conforme lo requiere la sección 2159 de la Ley de Procedimiento Administrativo Uniforme y por imponer una sanción a la parte peticionaria. El 18 de diciembre del mismo año, la recurrida compareció mediante escrito en Oposición a Petición de Certiorari. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver según lo intimado.

II.

La sección 2159 de la Ley de Procedimiento Administrativo Uniforme dispone que:

> La Agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo o personalmente con **no menos de quince (15) días de anticipación a la fecha de la vista**, excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho periodo, y deberá contener la siguiente información:
>
> (a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.
>
> (b) Advertencia de que las partes podrán comparecer asistidas de abogados, pero no estarán obligadas a estar así representadas, incluyendo los casos de corporaciones y sociedades.
>
> (c) Cita de la disposición de legal o reglamentaria que autoriza la celebración de la vista.
>
> (d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas,

si se imputa una infracción a las mismas y a los hechos constitutivos de tal infracción.

(e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.

(f) Advertencia de que la vista no podrá ser suspendida.

3 L.P.R.A. sec. 2159 (énfasis suplido).

La notificación a la vista en el caso de autos tiene fecha de 31 de octubre de 1997, o sea, **diez (10) días** antes del 10 de noviembre de 1997, fecha señalada para la celebración de la vista. Esta notificación fue depositada en el correo el 4 de noviembre de 1997 y no fue recibida por la Asociación hasta el viernes 7 de noviembre, tres días antes de la celebración de la vista.

Es evidente que el DRD incurrió en una clara violación de las disposiciones de la Ley de Procedimiento Administrativo Uniforme respecto a la notificación en cuestión. Tanto el propio tribunal apelativo como la parte recurrida así lo reconocen. Esta última, en su comparecencia ante nos, expresa que "no podemos negar que la parte recurrida no cumplió con el término dispuesto en la Ley Núm. 170."

El propósito de la sección 2159, supra, es permitir a las partes prepararse adecuadamente para la vista administrativa. Es por esto que la ley requiere no menos de quince días de anticipación para la notificación de la vista, salvo que exista causa debidamente justificada para

acatar dicho término, consignada en la notificación. Sobre este particular señala el Prof. Demetrio Fernández Quiñones, en su obra Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Ed. Forum, 1993, a la pág. 165, que:

> La reducción del periodo no puede ser de tal magnitud que le afecte al querellado su derecho a preparar su defensa, bien en lo referente a contestar la querella como a la disponibilidad de la prueba oral o documental que necesite el día de la vista.

Se trata de un término de cumplimiento estricto que las agencias vienen obligadas a observar, y que el foro apelativo viene obligado a hacerlo valer.

No hay duda que una notificación enviada con seis días de antelación a la celebración de una vista, además de no cumplir con lo claramente requerido por la Ley de Procedimiento Administrativo Uniforme, no le brinda a las partes tiempo suficiente para prepararse adecuadamente para su comparecencia ante la agencia administrativa. Erró el tribunal apelativo al no resolver conforme a la ley.

Además, fue claramente errónea la determinación del Tribunal de Circuito de Apelaciones, tomada sin base en el expediente ni fundamento alguno, de que la decisión de la peticionaria de no comparecer a la vista era "una estrategia más para ocasionar dilación injustificada de los procedimientos." El foro apelativo, como tribunal de derecho, no tenía justificación para hacer dicha determinación.

III.

El Tribunal de Circuito de Apelaciones, además de declarar sin lugar la petición de revisión, impuso una sanción económica a la peticionaria por presentar un recurso frívolo. La Regla 85 del Reglamento del Tribunal de Circuito de Apelaciones, aprobado el 25 de abril de 1996, dispone lo siguiente:

> Si el Tribunal de Circuito de Apelaciones determina que el recurso ante su consideración es frívolo o que se presentó para dilatar los procedimientos, lo denegará o desestimará, según sea el caso, e impondrá a la parte promovente o a su abogado(a) las costas, los gastos, los honorarios de abogado y la sanción económica que estime apropiada, la cual deberá reflejar en lo posible, el costo de la dilación para el Estado y para la parte opositora recurrida causado por la interposición del recurso, conforme a las guías que establezca el Tribunal de Circuito de Apelaciones.

La frivolidad se define como "aquello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna." I. Rivera García, _Diccionario de Términos Jurídicos_, 2da ed., 1985, a la pág. 108. Sólo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. Al discutir la norma procesal sobre la imposición de honorarios de abogado por temeridad hemos expresado que el objetivo de dicha regla es "castigar a aquel litigante perdidoso que, por su terquedad, obstinación, frivolidad o insistencia --en actitud desprovista de fundamentos-- obliga a la parte contraria a asumir necesariamente las molestias, gastos e inconvenientes de un pleito." _Velázquez Ortiz v. Universidad de Puerto_

Rico, 128 D.P.R. 234 (1991); Santos Bermúdez v. Texaco P.R., 123 D.P.R. 351 (1989); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).

Sin entrar a discutir los méritos de la alegación de la peticionaria ante el foro apelativo sobre la ausencia de facultad del DRD para declarar "inoperante" a la junta de directores de una asociación recreativa incorporada bajo la Ley General de Corporaciones, a tenor con lo que determinamos hoy sobre la notificación defectuosa, resolvemos que abusó de su discreción el Tribunal de Circuito de Apelaciones al imponer una sanción económica a la peticionaria. El recurso presentado no era frívolo.


IV.

Por los fundamentos expresados antes, procede que se expida el recurso, se revoque la resolución dictada por el Tribunal de Circuito de Apelaciones, y se ordene la celebración de una nueva vista administrativa en la que se salvaguarden los derechos estatutarios de todas las partes. Asimismo, procede que se revoque la sanción económica de $1,000.00 impuesta por el Tribunal de Circuito de Apelaciones. Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Departamento de Recreación
y Deportes
    Demandante-Recurrido

        v.

                     CC-1998-736     Certiorari

Asociación Recreativa Round
Hill, Inc.
    Demandada-Peticionaria

Club de Natación de Round
Hill, Inc.
    Parte Interventora

SENTENCIA

San Juan, Puerto Rico, a 19 de agosto de 1999.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente sentencia, se expide el recurso, se revoca la resolución dictada por el Tribunal de Circuito de Apelaciones, y se ordena la celebración de una nueva vista administrativa en la que se salvaguarden los derechos estatutarios de todas las partes. Asimismo, procede que se revoque la sanción económica de $1,000.00 impuesta por el Tribunal de Circuito de Apelaciones.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Asociado señor Hernández Denton concurre sin opinión. El Juez Asociado señor Rebollo López no interviene. El Juez Asociado señor Corrada del Río no intervino.

Carmen E. Cruz Rivera
Subsecretaria del Tribunal Supremo